May it please the Court, Alina Schall, Assistant Federal Defender for the District of Nevada, on behalf of Wendolyn Howard. Your Honors, in a supervised release revocation proceeding, a releasee has the right to confront and cross-examine adverse witnesses unless the government can put forth a good cause reason for not producing a witness. In this case, the government is trying to carve out what I believe is a dangerous exception for people who are the victims of violent crime. Under the government's logic, a person should not be compelled to testify. My client should not be allowed to cross-examine a witness merely because the experience would be too traumatic. Even if this Court were to accept that principle as a good cause reason for not producing the two witnesses in this case, Mr. Gibson and Ms. Rainwater, the problem is the government hasn't met that burden here. They don't, other than very equivocal and very conclusory statements, that testimony would be traumatic. They don't really have any evidence of trauma that would have been, that Ms. Rainwater would have experienced from testifying or that Mr. Gibson would have experienced from testifying. Roberts, were there any practical solutions to this? I mean, here they are, they're testifying in two revocation proceedings. Could the two of them have been consolidated, perhaps, or something else so that the witnesses don't have to every week come down and testify? Yes, Your Honor. That would have been a very practical way to deal with the problem. Unfortunately, the government did not seek that and instead attempted to preclude testimony in both proceedings. It's a very unique situation, I admit. We have a situation here where Judge Proe, in one proceeding, denied the government's request to only submit the preliminary, the testimony and transcripts from the preliminary State court proceeding. But Judge Hunt, on the other hand, in the case that's before the Court, simply took on faith the transcripts from the State court proceeding and from the prior Federal proceeding. Now, the problem with that is, is that it assumes that Judge Hunt's assumption was that the credibility determination was going to be the same for every fact-finding body that was going to look at these people, testifying, hear their testimony, see them in person. And obviously, we have a situation here where that didn't happen. Now, Judge Proe, in the earlier proceeding, found Ms. Rainwater's testimony to be the same as the State court proceeding, Mr. Howard was acquitted of most of the charges, very serious felony charges, I might add, related to the incident involving Ms. Rainwater. Let me stop you there. He did go to State court and he was convicted of something, right? He was, Your Honor. Here he was convicted of misdemeanor battery and gross misdemeanor false imprisonment. Let's assume you're right about this cross-examination problem. Can't we take judicial notice that he's been convicted in State court and that ended up itself as a violation of the supervised release? It is a violation of the supervised release, Your Honor, and I believe this Court could take judicial notice of that. And if we do that, then I guess we could issue an order that said, yeah, Mr. Howard should have had the right to cross-examine these people, but it's harmless error since he was subsequently convicted and now that establishes that he's in violation. Your Honor, I – it's not harmless error in this case because of the way that sentences were imposed by Judge Pro and Judge Hunt. I think that had Judge Hunt had an opportunity to hear the testimony – let me back up for a second. Now, what Judge Hunt could have done was sentenced Mr. Howard to consecutive time. So at best, your guy would be entitled to a resentencing, not a re-adjudication of his body. Correct. I believe he would be entitled to a resentencing because I think in this case, had the judge had an opportunity to observe Ms. Rainwater's demeanor, particularly Ms. Rainwater's demeanor, because she has some real credibility issues here, he may have said, well, there is a violation, but rather than doing consecutive time, he could have imposed the sentence concurrent either to the sentence imposed by Judge Pro or concurrent to whatever sentence he ultimately received in State court.   I think he would have said, well, you know, he's still in the State custody. He's still in the State custody, yes, Your Honor. And counsel, Judge Gould, if I could ask a question. So as I understand the relief you want, is you want us to vacate and remand for resentencing? Yes, Your Honor. That's the relief we're seeking. Okay. Now, let's assume, assuming for a minute that calling the witnesses in to be cross-examined would create some stress or even trauma. Does that matter under the Constitution, under the Confrontation Clause? Now, does the Confrontation Clause say you have a right to confront your witness, witnesses against you when they won't be traumatized by it? I apologize for interrupting a little bit earlier, Your Honor. But, no, the Constitution doesn't have any kind of exception carved out for witnesses any exception to the Confrontation Right that says you can only cross-examine, you can only confront a witness when it won't hurt their feelings. Now, had there actually been a showing that there would be a traumatic experience here for either Mr. Gibson or Ms. Rainwater, I think that there was ample ways available to the Court to get around any, to minimize any trauma that might have happened. I am thinking particularly of Maryland v. Craig. Now, I know it's a little inapposite because we're talking about a supervised release revocation as opposed to a trial. But Maryland v. Craig says, look, if there is a showing that testifying would be a good thing, the witnesses are scared to testify and see the defendant in court. There are ways that we can still have the fact finder be able to look at the person, be able to assess their credibility, assess their demeanor with minimal impact on their own, the witness's feelings. And there could have been a videoconference like we're doing here with you, Your Honor, or something of that nature. Okay, counsel, another question on the confrontation issues again. And as I read it, Judge Hunt had very decent motives. They didn't want to subject the witnesses to examination when they'd done it twice before, state court and the other federal court. But so my question is, has any other judge ever done that? Is there any precedent in any other circuit or any published district court case where a judge has said that the confrontation clause, confrontation, can be sidestepped in such circumstances where you have, you know, reliable evidence and some level of stress? Your Honor, I haven't done an exhaustive search, but in my briefs I actually cite an Eighth Circuit case, United States v. Martin, where they reached exactly the conclusion you're talking about. In that case, the victim there was the defendant was on revocation status because he had allegedly beaten his girlfriend quite severely, and there was evidence in the record that she was scared to testify. She refused to testify. She showed up to court but wouldn't testify. So there is a precedent when there is an actual evidentiary demonstration that the person may be too traumatized to testify. But that simply didn't happen here. I'd say this is much more akin to what happened in Comito, where you have very conclusory statements from a probation officer that a person doesn't want to testify, but there's no evidence that this person is actually too scared to testify against the defendant. And I see I have a minute and a half remaining. Can I reserve, please? You bet, Michelle. Thank you. Good morning. May it please the Court. Peter Levitt for the United States. Your Honor, in this case, in Judge Proh's prior revocation hearing, a Federal supervised release revocation hearing that occurred 13 days before Judge Hunt's revocation hearing, Ms. Rainwater was sobbing at supplemental excerpts of record, page 16. She was crying again at page 31. And on page 24, she said, well, I'm scarred. He busted my eye. I have scars here. He cut my ears. I have scars there. I have scars all over my body from the knife, the blade that he had. The kids are going to counseling. I'm still dealing with things, too. It's really hard. We're hearing over and over again that there's no evidence of trauma, no evidence of trauma, and this is being miscast and mischaracterized as Judge Hunt merely acting in a chivalrous fashion, protecting a witness. Well, let me just check the dates on a couple of things here. Your request to have her excused from testifying was filed when? It was before what you're reading, right? Yes, Your Honor. Okay. So there is no evidence. You didn't present any of this evidence that you're telling us now. You didn't tell that to Judge Hunt because it hadn't happened yet. No, but Judge Hunt Am I right about that? I don't believe you're correct, because what I'm reading from is from Judge Proh's supervised release hearing, which Judge Hunt received into evidence at Judge Hunt's hearing on May 20th. At Judge Proh's hearing on May 7th, Ms. Rainwater said, well, I'm scarred. He busted my eye. I have scars here. He cut my ear. And she said that when? She said that at the May 7th hearing in front of Judge Proh. May 7, 2013. Correct. But your request to have them excused occurred in March of 2013. So Judge Hunt didn't have any of that. It couldn't have because it happened two months later, right? Why are you fighting with me about that? Your Honor's statement is correct. Okay. Now, all Judge Hunt had was your statement that you would rather not put them through it again, and furthermore, they're going to have to testify in State court. How can that be legitimate grounds to excuse them? Well, I have two responses, Your Honor. First of all, there's more than that. And so you said, though, there may be more, but I'm going on what you said. Yes. That's what the trial prosecutor represented. But Judge Hunt, in his written ruling and in his oral amplification of his written ruling, made plain the unique procedural posture of this case. Ms. Rainwater and, for that matter, Mr. Gibson had both appeared in State preliminary hearings. Not only that, but each of these witnesses had appeared 13 days before, not in a State preliminary hearing, but in a Federal supervised release hearing, which had the exact same attorney. Indeed, Mr. Howard had the exact same defense attorney representing him before Judge Pro and before Judge Hunt. And that attorney, at Judge Pro's hearing, asked Ms. Rainwater question after question about how intoxicated she was, that she had a propensity to become violent when she was intoxicated. The attorney effectively cross-examined the officer who arrived at the scene and got the officer to discuss the statement of a neighbor who said that while they were playing cards or dominoes or whatnot, that Ms. Rainwater became belligerent and abusive and she drank way too much. Holes were poked in Ms. Rainwater's account with regard to how many telephones she had and how many telephone lines she reported to the police that she had. And there were other questions about the sheer implausibility about why would Ms. Rainwater become belligerent in the middle of the night who she'd never seen before? All of this, unlike in Comito where we had an ex-girlfriend's verbal unsworn statements. We have here sworn statements under oath 13 days before in a proceeding that had the precise same goals as Judge Hunt's proceeding. Let me skip ahead. Then she goes, then they go to State court and he's acquitted of the serious felonies and he's found guilty of a couple of misdemeanors, as I understand it. Yes, Your Honor. Why shouldn't we send it back and say, you know, you apparently assumed he had committed a felony violation, turns out he committed only a couple of misdemeanors. Go back and rethink the sentence now. To begin with, I believe that Your Honor is correct. I think any error would be harmless. Any other error with regard to whether he violated his release might be harmless, but he, the judge, imposed a consecutive sentence instead of a, what was it, 24 months consecutive? Yes, Your Honor. So he might have imposed a concurrent sentence or less than 24 months if he had known that these were misdemeanors. It's possible, but I don't think that anything in the record really supports the notion that the length of the sentences were keyed to a subsequent finding of a felony as opposed to a gross misdemeanor. I think what we have here and the fact that he's found guilty of a felony violation is not a bad thing. I don't know if that's the case in the context of a supervised release violation, Your Honor, because merely because of the sentence. Well, maybe not, but why shouldn't we give Judge Hunt the opportunity to pass on that? I think because Judge Hunt was aware at the time he conducted his hearing on May 20th, 2013, that the State trial had not yet occurred, and it was possible that the State would fail to prove the attempted murder charge. Here's my point. The people who actually heard the witnesses testify, namely these jurors, found this guy guilty of a much less serious thing. Maybe had Judge Hunt heard them testify, he would have deemed it less serious than it appeared. It is certainly possible that what Your Honor is suggesting would happen. I would respectfully submit, however, that it's not going to, given the severity of the beating in this case and the fact that for a grade-A, these grade-A violations where the guideline range was, I believe, 33 to 41 months, the statutory maximum of 24 months happened to be essentially a downward variant, below the low end anyway. It's possible what Your Honor's suggesting would play out. But first of all, I don't believe it. And second of all, Judge Hunt struck the comito balance here of a reduced interest in confrontation against the good cause, reduced because they cross-examined rainwater in the State proceeding. They cross-examined rainwater in an identical supervised release hearing 13 days prior. The comito balances look first at the interest in confrontation. It's reduced in this case. And the interest, the good cause for not having the confrontation was very strong. It wasn't mere chivalry. It was a witness who was cut up and beaten. Mr. Gibson, about whom we're hearing very little in this case, had a tooth knocked out and a nose broken. And Judge Hunt properly decided in this case that a third go-around was not necessary. Counsel, Judge Gould, if I could just interject a question or two before your time's up. So I understand that if Ms. Rainwater had testified, it would have been somewhat stressful for her, one could anticipate, the same kind of examination by the same defense lawyer and some stress. But still, it seems somewhat adventurous to say that confrontation can be dispensed with in this particular proceeding. So let me ask what precedent other than the Eighth Circuit case that the appellant raised? Are there any other published cases where courts have done this? I am not aware of any, Your Honor. I would, however, add that in this case, the constitutional right to confrontation is not being dispensed with. It's merely being balanced, as required under Comito, balancing it, and it has been reduced by virtue of the fact that they've already gotten to have two runs at Ms. Rainwater, including the same defense attorney cross-examining her for about 32 pages of transcript in the same proceeding 13 days earlier. But I'm not aware of any precedent that deals with a constitutional confrontation right balanced against good cause in the context where defense counsel and this defense counsel has already examined this witness about these matters 13 days earlier. Thank you, Mr. Chaffetz. Thank you. Thank you. Michelle, you get the last word. Thank you, Your Honors. Just a couple of brief points. First, I want to address Mr. Lovett's argument about Mr. Howard's reduced right to confrontation in this case. Now, this is an argument the government actually made in its brief, its answering brief at page 11, that because Mr. Howard had had an opportunity to cross-examine these two witnesses at the State preliminary proceeding, that he somehow has a reduced expectation, a reduced interest in confrontation. I would just point that a State prelim hearing is quite a different proceeding and the strategies involved in that sort of hearing is very different. Now, in both cases, and it's in the you have the transcripts from that in the record, in both cases they happen very soon after the actual incidents occur. How does the strategies aren't any different in the hearing before Judge Pro? To me, that's the soft underbelly of your whole case. You really haven't explained that to my satisfaction. I mean, this was several weeks before. On the same issue, the same witnesses and the same lawyers, what were you going to do at this next hearing? Your Honor, cross-examination, as Your Honor knows, is a very delicate procedure. It's an art. It's a chance for the judge to really observe a witness's demeanor. And as was demonstrated, their demeanor, the way they answer their questions, whether they're truthful or not, and as was demonstrated in this case, two different fact-finding bodies can reach two very different conclusions. Judge Hunt was essentially substituting his own credibility determination for Judge Pro's, and I don't think that should be allowed in this particular case. I see I'm over my time. Are there any other questions, Your Honor? Well, how much time, how much sentence time did Howard get from this particular proceeding beyond time he'd have to serve, you know, in Judge Pro's proceeding? Judge Pro imposed a sentence of 24 months consecutive to the State court case, and Judge Hunt imposed a sentence of 24 months consecutive to the State court and consecutive to Judge Pro's sentence. So in essence, he's doing 48 months in Federal time in – because of these two different violations of these two different release orders. So he got an extra two years, 24 months from Judge Hunt? Yes, Your Honor. From Judge Hunt's proceeding? Yes. Okay. Thanks. Thank you, Your Honors. Thank you, Michelle. Mr. Levitt, thank you. The case just argued is submitted. Good morning.
judges: Ripple, Silverman, Gould